Argued and submitted December 17, 1998, reversed and remanded
February 3, 1999

## Larry KELLEY,
*Respondent,*

*v.*

## CLACKAMAS COUNTY,
*Petitioner.*

### (97-139; CA A104016)

973 P2d 916

H. Andrew Clark, Assistant County Counsel argued the cause and filed the brief for petitioner. With him on the brief was Clackamas County Counsel.

Dover A. Norris-York argued the cause for respondent. With her on the brief were James H. Bean and Lindsay, Hart, Neil & Weigler, LLP.

Before De Muniz, Presiding Judge, and Armstrong and Linder, Judges.

DE MUNIZ, P. J.

## DE MUNIZ, P. J.

Respondent Kelley applied to Clackamas County for a variance to permit a pool house at a location in his front yard that did not satisfy the applicable setback requirement of the county zoning ordinance.[1] After the variance was denied by county planning personnel and by a county hearings officer, Kelley appealed to LUBA. It reversed the county's decision, and the county seeks our review. We reverse.

Section 1205.02(A) of the zoning ordinance allows the granting of a variance if

"[c]ompliance with the applicable requirement or standard of the ordinance would create a hardship due to one or more of the following conditions:

"1.  The physical characteristics of the land, improvements, or uses are not typical of the area. When the requested variance is needed to correct an existing violation, that violation shall not be considered as a condition 'not typical of the area.'

"2.  The property cannot be developed to an extent comparable with other similar properties in the area if the requirement or standard is satisfied.

"3.  Compliance with the requirement or standard would eliminate a significant natural feature of the property.

"4.  Compliance with the requirement or standard would reduce or impair the use of solar potential on the subject property or adjacent properties."

The hearings officer concluded that Kelley's inability to site the proposed pool house in compliance with the setback requirement was due to the physical characteristics and improvements on the property, within the meaning of section 1205.02(A)(1), but that he "has not established that compliance with the front yard setback [requirement] would create any hardship." The hearings officer's order explains:

---

[1] There is no question in this case about the location or the permissibility of the swimming pool itself.

"This pool house is intended to provide a place for users of the pool to shower and change clothes. The applicant's testimony as to the nature of a claimed hardship is that there is no other reasonable location for the pool house in the immediate vicinity of the swimming pool, and that compliance with the front yard setback standard will effectively preclude the pool house. The Hearings Officer cannot find, based on this record, that the inability of the applicant to construct an approximately 114 square foot pool house for the purposes stated creates a hardship. The applicant's home is approximately 15 feet from the swimming pool. Persons wishing to change or shower can do so in the home without any significant inconvenience. Indeed, this record establishes that other swimming pools within the near area are not accompanied by a separate pool house. Therefore, compliance with the front yard setback creates no identified hardship sufficient to justify the granting of a variance from that standard."

LUBA disagreed. It reasoned:

"[Kelley] contends that the challenged decision improperly construes and applies [section] 1205.02(A) by adding a threshold 'hardship' requirement in addition to the specific criteria set out in [section] 1205.02(A). [Kelley] argues that nothing in [section] 1205.02(A) supports the hearings officer's interpretation that [Kelley] must first establish a hardship before the four alternative criteria are applied.

"We agree with [Kelley] that the challenged decision improperly construes and applies [section] 1205.02(A). Nothing in the language of [section] 1205.02(A) provides a basis for the county to evaluate hardship beyond application of the four listed criteria. Those criteria describe four conditions, any one of which can constitute a hardship. Because the hearings officer found that at least one of those criteria was satisfied, he was obligated to approve the variance request."

The county assigns error to LUBA's conclusion and argues, through a variety of specific points, that the hearings officer's interpretation and application of section 1205.02(A) were correct. Reduced to essentials, the disagreement comes down to this: according to the county, section 1205.02(A) allows the granting of a variance only if one of the four conditions described in its numbered paragraphs is present *and*

*results* in a "hardship"; according to LUBA and Kelley, conversely, the presence of any one or more of the four conditions *is* a "hardship" within the meaning of the section and, without more, requires the granting of a variance.

■ At the textual level, we find the county's understanding of section 1205.02(A) to be the more convincing, for at least three reasons. First, the relevant phrase in the section refers to a "hardship *due to* one or more of the [four] conditions." (Emphasis added.) That phrase indicates that the required "hardship" is something that is separate from and a result of the conditions, as opposed to being embodied in or defined by the conditions. Second, as the county contends, LUBA's and Kelley's proffered interpretation would make surplusage out of the word "hardship." If the section was intended to mean what they understand it to mean, the word would have been wholly unnecessary, and the section could simply have provided for a variance if any of the four conditions "exist[s]" or is "present." Third, the plain, natural and ordinary meaning of "hardship" connotes something above and beyond the circumstances described in the four conditions. That fact adds to the likelihood that the meaning of the variance provision is that one of the conditions *and* a hardship must exist in order for a variance to be allowed, and detracts from LUBA's and Kelley's view that the existence of a condition is a hardship *per se*.

■ *Webster's Third New Int'l Dictionary,* 1033 (unabridged ed 1993) defines "hardship" as entailing "suffering or privation." The facts of this case, as the hearings officer found them, aptly illustrate that a landowner can come within a condition set forth in section 1205.02(A) and still come nowhere close to any related suffering or privation. Kelley's inability to place a pool house within the permitted setback area is the product of one of the conditions, *i.e.*, the characteristics of and improvements on the property. The consequence of that inability is that, instead of having a separate 114 square foot structure, Kelley and others whom he allows to use the pool must perform their ablutions in and navigate the 15-foot distance from his house to the pool. Like many consequences that might conceivably ensue from the existence of characteristics or improvements on property that are incompatible with the lawful placement of structures on it, that

consequence does not come within the plain, natural and ordinary meaning of "hardship."[2]

We conclude that the language of section 1205.02(A) compellingly supports the county's interpretation that, for a variance to be allowed, a hardship must *result* from the conditions and that the conditions *in themselves* do not *constitute* hardships.

Were it necessary to look beyond the language of the ordinance, the most apposite extrinsic considerations reinforce the same conclusion. In *Bienz v. City of Dayton*, 29 Or App 761, 778, 566 P2d 904, *rev den* 280 Or 171 (1977), we observed, in applying the variance ordinance in question there:

> "Like [under] most municipal variance laws, the applicant must make a showing of hardship to qualify for a variance."

To a like effect, *see Lovell v. Independence Planning Comm.*, 37 Or App 3, 7, 586 P2d 99 (1978), and authorities there cited.

Variance law is largely embodied in local legislation, and its particulars of course vary from locality to locality. It nevertheless contains, if not constants, recurring themes. As indicated in the cited cases, the concept of "hardship" is one of those themes. Another, as also indicated in *Lovell*, is that variances are an extraordinary remedy that "should not be employed as a substitute for the normal legislative process of amending zoning regulations." *Id.* Against that background, the appearance of the term "hardship" in the county's ordinance here cannot be regarded as a coincidence, independent of its traditional meaning, nor can it be assumed to have the mere tail-of-the-dog meaning—if that much—to which LUBA's and Kelley's interpretation would reduce it. In any

---

[2] Kelley has neither cross-petitioned nor made a cross-assignment of error that presents any question to us about the correctness of the hearings officer's findings or any related rulings by LUBA. Nevertheless, he describes a number of consequences that the hearings officer did not find or consider and that Kelley suggests *we* should hold amount to "hardships." One of the examples he gives in his brief is having "his guests passing back and forth through his expensive home dripping wet." Our scope of review under ORS 197.850 does not authorize us to make the factual findings necessary to substantiate Kelley's underlying premises, even if his legal conclusion about what might constitute a "hardship" were tenable.

event, for the reasons we have discussed, the language of section 1205.02(A) does not allow that interpretation.

This case is, in some respects, the reverse image of *deBardelaben v. Tillamook County*, 142 Or App 319, 922 P2d 683 (1996). There, the county governing body granted a variance after interpreting its ordinance in such a way, *inter alia*, as to virtually read the word "hardship" out of it. Notwithstanding the deferential review standard that applied to the governing body's interpretation under *Clark v. Jackson County*, 313 Or 508, 836 P2d 710 (1992), LUBA reasoned that the county's decision was contrary to fundamental principles of variance law and reversed it. We, in turn, reversed LUBA's decision, and held that the local interpretation of the ordinance survived the deferential standard of *Clark*. We observed, in concluding our opinion, that "LUBA's opinion contains an able discussion of variance law, but it cannot be sustained as an application of *Clark*[.]" *deBardelaben*, 142 Or App at 326.

■■ In the present case, conversely, the county hearings officer interpreted the ordinance in a manner that gave effect to the word "hardship" and that was consistent with general principles of variance law, and LUBA reversed his decision. However, notwithstanding that asymmetry, the *greatest* difference between this case and *deBardelaben* is that no principle of deferential review applies here. Neither LUBA nor we defer to local interpretations of ordinances made by hearings officers or other local entities inferior to the governing body, *Gage v. City of Portland*, 319 Or 308, 877 P2d 1187 (1994), and in no instance do we defer to LUBA on a question of law. *Reusser v. Washington County*, 122 Or App 33, 857 P2d 182, *rev den* 318 Or 60 (1993). For the reasons we have stated, we agree with the county's interpretation of section 1205.02(A) and disagree with LUBA's.

Because LUBA reversed the county's decision on the basis of the interpretive question, it did not reach Kelley's other assignments. We remand for it to do so.

Reversed and remanded.