Argued and submitted June 5, on petition, reversed and remanded; affirmed on cross-petition October 10, 2007

## VinCEP,
## Domaine Drouhin, and Jason Lett,
*Petitioners*
*Cross-Respondents,*

*and*

### Ilsa PERSE,
*Respondent,*

*v.*

## YAMHILL COUNTY,
*Respondent,*

*and*

## David KAHN
## and The Hazel E. Timmons Trust,
*Respondents*
*Cross-Petitioners.*

### Land Use Board of Appeals
### 2006157; A135362

171 P3d 368

William K. Kabeiseman argued the cause for petitioners-cross-respondents. With him on the briefs were Edward J. Sullivan, Carrie A. Richter, and Garvey Schubert Barer.

Roger A. Alfred argued the cause for respondents-cross-petitioners. With him on the brief were Michael C. Robinson, Corinne Sam, and Perkins Coie LLP.

No appearance for respondent Ilsa Perse.

No appearance for respondent Yamhill County.

Before Wollheim, Presiding Judge, and Brewer, Chief Judge, and Sercombe, Judge.

SERCOMBE, J.

**SERCOMBE, J.**

Petitioners (opponents of the land use decision under review) and cross-petitioners (applicants for that land use decision) seek review of an opinion and order of the Land Use Board of Appeals (LUBA). LUBA remanded a county ordinance that approved comprehensive plan and zoning ordinance amendments to allow placement of a 50-room luxury hotel in an agricultural area. LUBA concluded that the county insufficiently justified its land use decision under state policies that inhibit the siting of urban development outside the urban growth boundaries of cities. The decision was remanded for additional justification under those policies.

Petitioners assert that LUBA should have imposed more exacting requirements for the hotel approval because of state rules protecting agricultural land from development. Cross-petitioners complain that LUBA erred in requiring any further justification by the county. Our review is to determine whether LUBA's order is "unlawful in substance" under ORS 197.850(9)(a). We reverse and remand for further consideration of the issue of the sufficiency of the findings on the exception to Goal 3 (Agricultural Lands), and otherwise affirm the opinion and order of the board.

The facts are stated in the opinion and order under review:

> "The subject property is a 65-acre parcel located two to three miles and roughly equidistant from the nearby cities of Dayton, Lafayette and Dundee, in a premier wine-growing region known as the Red Hills of Dundee. The parcel is designated Agriculture/Forestry Large Holding and zoned for exclusive farm use (EFU). The dominant soil types on the property are Jory soils that are suitable for agricultural uses, including vineyards. However, the property is not currently farmed. Surrounding uses include a bed and breakfast, vineyards, wineries, and other resource uses.

> "[Cross-petitioners] propose to develop a luxury 'wine country' hotel on a southern 12-acre portion of the subject parcel, on a ridge that is the highest part of the property. The remainder of the 65-acre parcel will remain in EFU

zoning. The county's decision describes the proposal as follows:

" 'The applicants' proposal is to develop a hotel modeled after certain high-end wine country hotels in Napa Valley—specifically, Auberge du Soleil, Calistoga Ranch and Meadowood. The hotel will be relatively small, with approximately 50 rooms, a restaurant, a spa, and limited meeting facilities. The proposed hotel will support and enhance the Yamhill County economy by providing a unique luxury hotel in the heart of wine country that will allow wine country tourists to stay in Yamhill County rather than in Portland. In order to provide the requisite destination wine country experience similar to the identified Napa Valley hotels, the hotel must be located in a quiet and idyllic rural setting that affords privacy as well as expansive views of the surrounding wine country, and must also be in close proximity to wineries with tasting rooms.' "

The county approved comprehensive plan diagram and zoning map changes to change the designation of the 12-acre area from agriculture and forestry designations to a commercial designation. Petitioners sought review by LUBA of the land use decision. Although petitioners assigned a number of errors in the LUBA appeal, the core issues concerned the interpretation and reconciliation of rules of the Land Conservation and Development Commission (LCDC) on exceptions to the statewide planning goals. Those same issues are contested on review in this court. Some context is necessary before stating the precise issues on review.

ORS 197.225 directs LCDC to "adopt goals and guidelines for use by state agencies, local governments and special districts in preparing, adopting, amending and implementing existing and future comprehensive plans." The commission adopted 19 goals, addressing planning processes, urban growth management, public infrastructure, protected land uses and other matters. Each county and city is required to adopt and amend comprehensive land use plans consistent with the statewide planning goals. ORS 197.175(2). Those comprehensive plans contain land use maps and policy statements that interrelate circumstances that affect the use of land. ORS 197.015(6).

In this case, the county amended its plan map to change the designation of the affected property from agricultural and forestry uses to commercial uses (and the implementing zoning designations from exclusive farm use to recreational commercial). The amendment was inconsistent with Goal 3 (Agricultural Lands), which requires that real property classified as agricultural lands be preserved and maintained for farm use. OAR 660-015-0000(3). The new commercial designation may also have been inconsistent with Goal 14 (Urbanization), which generally requires urban uses to be confined within city urban growth boundaries established under that goal. OAR 660-015-0000(14).

Goal 2 (Land Use Planning), Part II, permits an "exception" to the requirements of a goal for "specific properties or situations." OAR 660-015-0000(2). The text of Goal 2, Part II, pertaining to exceptions is codified at ORS 197.732. The policies permit three types of goal exceptions: for land physically developed so that the property is no longer able to comply with the dictates of a goal, for land irrevocably committed to uses not allowed by the applicable goal, and when there are sufficient reasons to not apply the particular goal—the so-called "reasons exception." Goal 2, Part II, and ORS 197.732(1)(c) detail the requirements for a reasons exception:

"(1)   A local government may adopt an exception to a goal if:

"* * * * *

"(c)   The following standards are met:

"(A)   Reasons justify why the state policy embodied in the applicable goals should not apply;

"(B)   Areas which do not require a new exception cannot reasonably accommodate the use;

"(C)   The long term environmental, economic, social and energy consequences resulting from the use at the proposed site with measures designed to reduce adverse impacts are not significantly more adverse than would typically result from the same proposal being located in areas requiring a goal exception other than the proposed site; and

"(D) The proposed uses are compatible with other adjacent uses or will be so rendered through measures designed to reduce adverse impacts."

Thus, state law requires satisfaction of four standards for a reasons exception (reasons justification, lack of alternatives, consequences, and compatibility) in order to designate land in a comprehensive plan for uses otherwise precluded by the statewide planning goals. ORS 197.732(3)(b) directs the commission to adopt rules establishing "[u]nder what circumstances particular reasons may or may not be used to justify [a reasons] exception * * *." The principal questions on review concern the reconciliation of those rules when an exception is taken to more than one statewide planning goal.

LCDC adopted rules specifying the particular criteria for the reasons justification portion of an exception to Goal 14 (Urbanization) in order to establish new "urban development" on "undeveloped rural lands." OAR 660-014-0040(2) provides:

"A county can justify an exception to Goal 14 to allow establishment of new urban development on undeveloped rural land. Reasons that can justify why the policies in Goals 3, 4, 11 and 14 should not apply can include but are not limited to findings that an urban population and urban levels of facilities and services are necessary to support an economic activity that is dependent upon an adjacent or nearby natural resource."[1]

OAR 660-012-0070 separately states the requirements for all four factors for a reasons exception to Goal 12 (Transportation) to allow nonrural transportation improvements on rural land. Another rule, OAR 660-004-0022(2) to (11), sets out the standards to be used for the reasons justification part of an exception to allow particular land uses (rural residential development, rural industrial development, expansion of unincorporated communities, and certain uses otherwise precluded by Goals 15 through 19).

---

[1] OAR 660-014-0040(3) further sets out standards for the lack of alternatives, consequences, and compatibility parts of a Goal 14 exception in order to allow new urban development on undeveloped rural lands.

OAR 660-004-0022(1) provides generic standards for the reasons justification factor for an exception not otherwise regulated elsewhere in the rules:

"An exception under Goal 2, Part II(c) can be taken for any use not allowed by the applicable goal(s). The types of reasons that may or may not be used to justify certain types of uses not allowed on resource lands are set forth in the following sections of this rule:

"(1) For uses not specifically provided for in subsequent sections of this rule or in OAR 660-012-0070 or chapter 660, division 14, the reasons shall justify why the state policy embodied in the applicable goals should not apply. Such reasons include but are not limited to the following:

"(a) There is a demonstrated need for the proposed use or activity, based on one or more of the requirements of Goals 3 to 19; and either

"(b) A resource upon which the proposed use or activity is dependent can be reasonably obtained only at the proposed exception site and the use or activity requires a location near the resource. An exception based on this subsection must include an analysis of the market area to be served by the proposed use or activity. That analysis must demonstrate that the proposed exception site is the only one within that market area at which the resource depended upon can reasonably be obtained; or

"(c) The proposed use or activity has special features or qualities that necessitate its location on or near the proposed exception site."

In the proceedings below, petitioners asserted that OAR 660-004-0022(1)(a) sets a demanding standard for the reasons justification portion of an exception to Goal 3 and that the local government record and findings were insufficient to meet that standard. Cross-petitioners argued that OAR 660-014-0040(2) sets out the entire standard for taking a reasons exception under Goal 14 for "new urban development on undeveloped rural land" as well as any other necessary exception to Goals 3, 4, or 11, and that the findings were sufficient under that rule. In other words, cross-petitioners argued that, when an exception to both Goal 14 and Goal 3 is taken to allow urban development on rural, agricultural

land, OAR 660-014-0040 is the only applicable standard, and a county need not apply OAR 660-004-0020 (general requirements for an exception) or OAR 660-004-0022(1) (requirements for the reasons justification part of a reasons exception to certain goals, including Goal 3). Petitioners contended that the proposed hotel and related facilities were not "new urban development" under OAR 660-014-0040 so that the rule did not apply and, therefore, did not displace the need to comply with other rules. Petitioners alternatively argued that, if OAR 660-014-0040 applied, its requirements did not supplant the need to apply OAR 660-004-0020 and OAR 660-004-0022(1) in order to except to the application of Goal 3.

LUBA agreed with cross-petitioners' contentions and held:

> "As [cross-petitioners] note, OAR 660-004-0000(1) states that OAR chapter 660, division 004 interprets the exception process as it applies to statewide Goals 3 to 19, '[e]xcept as provided for in OAR chapter 660, division 14[.]' Similarly, OAR 660-004-0022(1) appears to exempt from that rule 'uses not specifically provided for in * * * OAR chapter 660, division 14[.]' * * * Reading those rules together, it is reasonably clear that the Land Conservation and Development Commission (LCDC) intends that a reasons exception for proposed urban development on rural land be evaluated under OAR chapter 660, division 014, instead of OAR 660-004-0020 or 660-004-0022 * * *."

(Footnote omitted.)

■■ In their first and second assignments of error on review, petitioners reiterate their arguments below and contend that LUBA's interpretation of OAR 660-014-0040 was "unlawful in substance." We construe an agency rule under the same principles that apply to the construction of a statute under *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610-12, 859 P2d 1143 (1993), by examining first the text and context of the enactment. *D. S. Parklane Development, Inc. v. Metro*, 165 Or App 1, 15 n 4, 994 P2d 1205 (2000). We conclude that a proposed urban development on rural, agricultural land must be justified under OAR 660-004-0020, OAR 660-004-0022(1), *and* OAR 660-014-0040 in order to give

effect to policies pertinent to justifying the conversion of agricultural land to nonresource uses as well as to rules specific to allowing urban development of rural land.

In determining that compliance with OAR 660-014-0040 alone is sufficient to justify exceptions to both Goal 3 and Goal 14, LUBA conflated two related, but different, questions: whether OAR 660-014-0040 is the only standard for justifying an exception to Goal 14 for new urban development on rural lands (excluding any separate requirements of OAR chapter 660, division 4); and, whether justification of a Goal 14 exception under OAR 660-014-0040 excuses the need for a separate justification of a Goal 3 exception under OAR chapter 660, division 4. While OAR 660-014-0040 may provide the exclusive requirements for a Goal 14 exception to allow urban development on rural lands, it does not follow that the rule supplies the exclusive standards for taking other exceptions.

OAR 660-004-0000(1) states the function of the OAR chapter 660, division 4, rules and is pertinent to the first of the two related questions. It provides:

> "The purpose of this rule is to explain the three types of exceptions set forth in Goal 2 'Land Use Planning, Part II, Exceptions.' Except as provided for in OAR chapter 660, division 14, 'Application of the Statewide Planning Goals to Newly Incorporated Cities and to Urban Development on Rural Lands' and OAR chapter 660, division 12, 'Transportation Planning', section 0070, 'Exceptions for Transportation Improvements on Rural Land', this division interprets the exception process as it applies to statewide Goals 3 to 19."

The plain reading of that provision is that the OAR chapter 660, division 4, rules apply to an exception except to the extent that a more particular rule applies to that exception under OAR chapter 660, division 12 or division 14. OAR 660-014-0040(2) specifically sets out the criterion for the reasons justification standard for a Goal 14 exception to allow urban development on rural land. For that type of Goal 14 exception, OAR 660-004-0000(1) excuses the need to apply the more generic reasons justification standard that exists

under OAR 660-004-0022(1). OAR 660-004-0022(1) reiterates that its reasons justification standard does not apply to "uses specifically provided for in * * * chapter 660, division 14 * * *."

Thus, the board was correct in concluding that the reasons justification factor for the "urban development" Goal 14 exception here must be analyzed under OAR 660-014-0040(2) and not under OAR 660-004-0022(1). Similarly, OAR 660-014-0040(3) provides particular criteria for the lack of alternatives, consequences, and compatibility factors for an "urban development" Goal 14 exception, excusing the need to apply OAR 660-004-0020 standards that apply to other types of exceptions.[2]

The text of OAR 660-004-0000(1), however, does not imply that a Goal 3 exception required under Goals 2 and 3 is somehow excused because a Goal 14 exception is taken. OAR 660-004-0010(3) unequivocally states that an exception for one goal does not suffice for an exception to a different goal:

> "An exception to one goal or goal requirement does not assure compliance with any other applicable goals or goal requirements for the proposed uses at the exception site. Therefore, an exception to exclude certain lands from the requirements of one or more statewide goals or goal requirements does not exempt a local government from the requirements of any other goal(s) for which an exception was not taken."

OAR 660-004-0010 lists the circumstances in which an exception is or is not required. It requires an exception to

---

[2] This construction of the rules, to apply the particular OAR chapter 660, division 14, standards for an "urban development" exception to Goal 14 instead of the generic standards for all exceptions under OAR 660-004-0020 and OAR 660-004-0022, was presaged by *dictum* in *1000 Friends of Oregon v. Yamhill County*, 203 Or App 323, 126 P3d 684 (2005). That case concerned whether the OAR chapter 660, division 12, rules on an exception to Goal 12 for a proposed highway on rural land excused the need to comply with the OAR chapter 660, division 4, rules for exceptions to Goals 3 and 12, among other goals. This court quoted the prior text of OAR 660-004-0000(1), and noted that, "when LCDC means to exempt certain kinds of actions from the exception process in OAR chapter 660, division 4, it knows how to do so." *Id.* at 333. Those "certain kinds of actions," however, were the specific goal exceptions "provided for in OAR chapter 660, division 14," and not other exceptions that might be coupled with the Goal 14 exception.

Goal 3 in order to avoid its restrictions on the use of agricultural land, except that "an exception to Goal 3 'Agricultural Lands' is not required for any of the farm or nonfarm uses permitted in an exclusive farm use (EFU) zone under ORS chapter 215 and OAR chapter 660 division 033, 'Agricultural Lands[.]' " Thus, the rule describes when an exception to Goal 3 is not required, and it omits the situation in which an exception to Goal 14 is taken under OAR 660-014-0040.

OAR 660-004-0000(1) should be read to be consistent with those policies, to excuse compliance with OAR chapter 660, division 4, exception criteria for Goals 12 or 14 when those policies are more specifically provided elsewhere and not to excuse application of the otherwise relevant Goal 3 exception standards in OAR chapter 660, division 4. The context of other regulations in OAR chapter 660 supports that construction of OAR 660-004-0000(1). The rules explicitly excuse the need to take additional goal exceptions when a Goal 12 exception is taken and when an urban growth boundary is amended. OAR 660-012-0070(2) provides:

> "When an exception to Goals 3, 4, 11, or 14 is required to locate a transportation improvement on rural lands, the exception shall be taken pursuant to ORS 197.732(1)(c), Goal 2, and this division. The exceptions standards in OAR chapter 660, division 4 and OAR chapter 660, division 14 shall not apply. Exceptions adopted pursuant to this division shall be deemed to fulfill the requirements for goal exceptions required under ORS 197.732(1)(c) and Goal 2."

Similarly, the rules expressly excuse the need to take an exception when an urban growth boundary is amended. OAR 660-024-0020(1)(a) provides that "[t]he exceptions process in Goal 2 and OAR [chapter] 660, division 4, is not applicable" when establishing or amending an urban growth boundary. *See also* OAR 660-004-0010(1)(c)(C) (excusing the need for goal exception when amending an urban growth boundary under the current version of Goal 14). That context of OAR 660-004-0000(1), the contrast of other rules that explicitly require or excuse the need for exceptions analysis under OAR chapter 660, division 4, suggests that what is explicitly required by other rules ought not to be assumed to be implicitly stated by OAR 660-004-0000(1).

The rule's limited ambit—directing the use of more specific policies when taking an exception under Goal 12 or Goal 14—is corroborated further by the text and logic of the underlying statewide planning goals and statutes.

Those underlying policies have been applied by the courts in the interpretation of past LCDC rules to require separate exceptions analysis for each goal that is not applied to a plan amendment. In *1000 Friends of Oregon v. LCDC (Curry Co.)*, 301 Or 447, 724 P2d 268 (1986), the Supreme Court held that a committed lands exception to Goals 3 and 4 was insufficient to justify a separately required exception to Goal 14. The court held:

> "Even if exceptions to the resource goals and to Goal 14 were governed by the same administrative rule, the former would not generally suffice to meet the requirements for the latter. The analysis that must be done to justify exceptions to each goal, and the uses which exceptions to each goal allow, are quite different. Each goal requires and allows different kinds of uses; therefore, justifying 'committed' exceptions to different goals requires findings that different kinds of uses are 'impracticable.' *See* ORS 197.732(1)(b). Exceptions to Goals 3, 4 and other resource goals cannot generally suffice as exceptions to Goal 14 because the former necessitate only a determination that a narrow category of uses, the particular resource uses required by the goal, are impracticable, while the latter necessitates a finding that not merely resource uses, but all other rural uses, are impracticable."

*Id.* at 485.

The same logic applies to the different analyses for a reasons exception to Goal 14 and one to Goal 3. Whatever overlap might exist in the application of the consequences and compatibility factors to take an exception to each goal, the lack of alternatives analysis for each goal exception is distinct. The "areas which do not require a new exception" to Goal 14 under ORS 197.732(1)(c)(B) and Goal 2, Part II(c)(1), are lands within urban growth boundaries and areas for which a Goal 14 exception has already been taken. *See* OAR 660-014-0040(3)(a) (required showing for Goal 14 exception to allow urban development on rural lands is that development "cannot be reasonably accommodated in or

through expansion of existing urban growth boundaries or by intensification of development in existing rural communities").

By contrast, the "areas which do not require a new exception" to Goal 3 include lands within urban growth boundaries, nonresource lands outside of an urban growth boundary, and lands for which an exception to Goal 3 has already been taken. *See* OAR 660-004-0020(2)(b) (requiring examination of nonresource lands, committed lands, and lands within urban growth boundaries for exception to resource goal). The statutory and Goal 2 exception analysis is incomplete if the alternatives analysis under one goal is allowed to substitute for that inquiry under a different goal. Thus, it is proper to construe OAR 660-004-0000(1) to require those distinct inquiries.

In sum, an exception to Goal 3 is fundamentally different from an exception to Goal 14. The purpose of Goal 3 is to preserve and maintain agricultural lands for farm use. Goal 14 functions to confine urban uses inside urban growth boundaries and to inhibit their location on rural land, whether the land is agricultural land or not. The rationale for locating a use outside of an urban growth boundary may only partly explain why the use should be located on agricultural resource land. Indeed, under cross-petitioners' logic, the same proof and findings would justify location of the luxury hotel outside of an urban growth boundary on land not suitable for farming as would justify its location on prime agricultural land. Goals 2 and 3 require an additional justification. LUBA's construction of OAR 660-004-0000(1) was unlawful in substance because it conflated the exceptions processes for Goals 3 and 14 into a single inquiry under OAR 660-014-0040.

In the local government proceedings, the county made alternative findings under OAR chapter 660, division 4, to justify the exception to Goal 3. LUBA did not review the sufficiency of those findings because it concluded that its review was unnecessary. In light of our conclusion that OAR chapter 660, division 4, applies to the Goal 3 exception in this case, a remand to LUBA is necessary so that the board can evaluate the county's findings in that regard.

We affirm without discussion the other assignments of error raised in the petition and cross-petition.

On petition, reversed and remanded; affirmed on cross-petition.